IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD L. ABBOTT, | : | |
| | : | C.A. No. 2021-0409 JJC |
| Plaintiff, | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHLEEN M. VAVALA, DAVID A. | : | |
| WHITE, COLLINS J. SEITZ, JR., | : | |
| JAMES T. VAUGHN, JR., TAMIKA R. | : | |
| MONTGOMERY-REEVES, GARY F. | : | |
| TRAYNOR, and KAREN L. VALIHURA, | : | |
| | : | |
| Defendants. | : | |

Submitted: June 24, 2021
Decided: June 30, 2021

**ORDER**

*Plaintiff's Application for Certification of Interlocutory Appeal – DENIED*

On June 30, 2021, after considering Plaintiff Richard Abbott's application to certify an interlocutory appeal, and the Defendants' opposition to Plaintiff's application, it appears that:

1.  On June 3, 2021, the Court denied Mr. Abbott's motions for a temporary

restraining order ("TRO") and to expedite the proceedings. Mr. Abbott now requests that the Court certify an interlocutory appeal of those decisions. In Mr. Abbott's suit, he named the Chief and Deputy Counsel of Delaware's Office of Disciplinary Counsel ("ODC"), and the five members of the Delaware Supreme Court as defendants. He alleges they are violating State and federal racketeering laws and are depriving him of certain constitutional rights. In addition to seeking a TRO, which the Court denied, he seeks a preliminary and permanent injunction, a declaratory judgment, and a Court order placing Delaware's attorney disciplinary system into receivership.

2. In his publicly filed complaint and briefing, Mr. Abbott described his pending disciplinary complaint and discussed the status of the proceedings. He also disclosed what ODC alleges to be his misconduct. Mr. Abbott further publicly disclosed that ODC presented those misconduct charges to the Delaware Supreme Court's Preliminary Review Committee ("PRC"), and that the PRC found probable cause to charge him with violating several ethical rules. According to Mr. Abbott, he now awaits the next step in the attorney disciplinary process -- a hearing before a Board of Professional Responsibility ("BPR") panel. Those proceedings are in the discovery stage with a hearing set before a BPR panel in November 2021.

3. After the June 3, 2021 hearing, the Court denied both Mr. Abbott's motion for a TRO and his motion to expedite for the reasons stated on the record.[1] As the Court explained, Mr. Abbott failed to demonstrate that he met any of the three TRO factors.[2] In fact, all three factors weighed strongly against granting Mr. Abbott's

---

[1] Tr. 54-59.

[2] *See Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Price,* 1989 WL 108412, at *2 (Del. Ch. Sept. 13, 1989)(explaining that the movant must demonstrate (1) a colorable claim on the merits; (2) that imminent, irreparable is harm likely to occur; and (3) that in balancing the equities, the movant is favored).

request. Furthermore, Mr. Abbott did not meet his burden on his motion to expedite because he did not demonstrate that the two factors relevant to that inquiry made expedition appropriate.[3] Finally, the Court provided an independently dispositive reason for denying the motions. Namely, the Delaware Supreme Court separately ordered that *his* disciplinary proceedings proceed without interruption.[4]

4. Regarding his application for a TRO, the Court concluded that Mr. Abbott failed to demonstrate a colorable claim.[5] As the Court explained, the Delaware Supreme Court has inherent and exclusive jurisdiction over attorney governance and disciplinary matters.[6] Despite Mr. Abbott's arguments to the contrary, that principle is unqualified. In fact, as recently as June 10, 2021, the Delaware Supreme Court reaffirmed it.[7] Moreover, ODC, the PRC, and the BPR are separately recognized arms of the Delaware Supreme Court.[8] In fact, when considering Mr. Abbott's arguments in a separate filing, the Supreme Court has already rejected his argument that these arms should be treated separately from the body. Specifically, it ruled that no lower court could control disciplinary counsel's

---

[3] Tr. 58-59; s*ee also In re TriQuint Semiconductor, Inc. Stockholders Litig.,* 2014 WL 2700964, at *2 (Del. Ch. June 13, 2014)(explaining that to warrant expedited proceedings, a movant must show a colorable claim on the merits and a strong possibility of irreparable harm).

[4] *See In re Richard L. Abbott, Esq.,* 2021 WL 1996927, at *1-2 (Del. May 19, 2021)(ordering that "ODC attorneys shall continue to prosecute the pending disciplinary action against Abbott, and the current BPR Panel assigned to consider the charges against Abbott shall continue").

[5] Tr. 55:2-7.

[6] *In re Froelich,* 838 A.2d 1117, 1120 (Del. 2003).

[7] *See Hunt v. Ct. of Ch.*, 2021 WL 2418984, at *6 (Del. June 10, 2021)(recognizing the Delaware Supreme Court's "sole and exclusive responsibility over all matters affecting governance of the Bar").

[8] *See* Del. Supr. Ct. R. 64 (creating ODC and defining its responsibilities); *see also In re Matter of Machette,* 2004 WL 1535729, at *1 (Del. June 17, 2004)(TABLE)(recognizing that the Office of Disciplinary Counsel is "an arm of the Supreme Court"); Del. Supr. Ct. R. 62 (creating and defining the responsibilities of the Preliminary Review Committee and the Board of Professional Responsibility).

3

actions.[9] On balance, this Court has no jurisdiction to enjoin the members of the Supreme Court, or ODC as an arm of the Supreme Court, from taking action that falls within the Supreme Court's inherent and exclusive jurisdiction. Accordingly, Mr. Abbott failed to demonstrate a colorable claim for injunctive relief at the hearing.

5. Likewise, for several reasons, Mr. Abbott failed to demonstrate imminent irreparable harm absent a TRO. First, the Court explained that it need take no action to maintain the status quo.[10] To the contrary, Mr. Abbott's requested relief would alter the status quo by halting an ongoing disciplinary proceeding. Second, Mr. Abbott continues to enjoy the benefits of an unencumbered license to practice law while he awaits a decision in that forum. Accordingly, he identified no harm that will befall him in the interim, other than the costs and stress that accompany any litigation. Were the Court of Chancery to somehow halt his disciplinary proceedings, it would merely shift the forum, not the costs and stress. Third, Mr. Abbott offered only conclusory allegations that the disciplinary process treats him unfairly. He did not demonstrate a likelihood that Delaware's attorney disciplinary process, with its multiple levels of review and an adversarial hearing, fails to provide due process. It provides him adequate protection, and the Delaware Supreme Court has repeatedly recognized that it provides due process.[11]

6. Finally, in its decision after the hearing, the Court explained why a

---

[9] See Abbott v. Aaronson., 2019 WL 925856, at *1 (Del. Feb. 25, 2019)(TABLE)(explaining, in the context of a writ of mandamus, that disciplinary counsel serves at the pleasure of the Delaware Supreme Court, and accordingly are subject to appointment, removal, and direction by the Supreme Court only, and not a lower court).

[10] Tr. 56; see Gimbel v. The Signal Companies, 316 A.3d, 599, 602 (Del. 1974)(explaining that the purpose of a TRO is generally to maintain the status quo).

[11] See Froelich, 838 A.2d at 1120 (discussing the discipline process, the role of the arms of the Supreme Court, and the Supreme Court's final decision-making authority over attorney discipline).

4

balancing of the hardships did not favor a TRO. Although Mr. Abbott has the unquestionable right to defend himself, he did not substantiate why he could not adequately do so in the current forum. Pending final disposition of his disciplinary case, he continues to practice law without restriction, which is not a hardship. Furthermore, as the Supreme Court recognized in its May 18, 2021 Order, Mr. Abbott remains free to contest any alleged procedural irregularities when the Supreme Court reviews the BPR's recommendations.[12] On the other end of the scale, the Court considered the hardship that would impact Delaware's attorney disciplinary process if the Court were to enjoin the proceedings. Namely, such interference would adversely impact the public's interest in appropriate professional regulation of attorneys. In those terms, the public's interest in a defined system that regulates attorney conduct weighs heavily against upending the process, mid-stream.

7. Independent of Mr. Abbott's failure to justify a TRO or expedition of the proceedings, the Court also denied Mr. Abbott's motions for another reason. Namely, the Delaware Supreme Court's May 18, 2021 Order (the "Order") specifically prohibited any interference with his disciplinary case through alternate litigation. The Order provides:

> [i]n the exercise of [the Delaware Supreme Court's] exclusive authority to supervise and discipline members of the Delaware Bar, and to protect the effective functioning of the disciplinary process, . . . the Court ORDERS as follows: ODC attorneys shall continue to prosecute the pending disciplinary action against Abbott, and the current BPR Panel assigned to consider the charges against Abbott shall continue to hear the action and make a recommendation to the Court. Any objections to the conduct of the ODC attorneys or the BPR Panel, or their continued participation in the disciplinary proceedings will be considered by the [Supreme] Court upon review of the Panel's recommendation.[13]

---

[12] *In re Abbott,* 2021 WL 1996927, at *1.
[13] *Id.*

5

This, independently and definitively, settles the issue. Even if Mr. Abbott had raised a colorable claim for a TRO or injunction, the Court of Chancery, as an inferior court, could not enjoin the five members of the Supreme Court and ODC officials from applying the disciplinary process to Mr. Abbott. It could not, both because it lacks jurisdiction to control the proceedings of a higher court and because a higher court has expressly ordered a lower court not to interfere with his proceedings.[14]

8. Here, Mr. Abbott requests that the Court certify an appeal of its two interlocutory orders pursuant to Court of Chancery Rule 72(b) and Supreme Court Rule 42. The latter provides the applicable standard. Namely, interlocutory appeals are the exception, not the rule.[15] They are disfavored because they disrupt the flow of litigation, cause delay, and exhaust party and judicial resources.[16] Furthermore, a trial court must consider (1) a general standard and (2) eight separate criteria when it evaluates whether it should certify an interlocutory appeal.[17]

---

[14] *See Marvel v. New Castle Cty. Super. Ct.,* 2016 WL 3563273, at *1 (Del. June 21, 2016) (TABLE)(holding that the Court of Chancery has no jurisdiction to review rulings made by the Supreme Court.); *In re Abbott, 2021 WL 1996927,* at *1-2 (prohibiting Mr. Abbott, in effect, from pursuing any new action regarding this matter).

[15] *Black v. Hollinger Int'l, Inc.,* 2004 WL 906587, at *1 (Del. Apr. 23, 2004)(TABLE).

[16] Del. Supr. Ct. R. 42(b)(ii).

[17] *See* Del. Supr. Ct. R. 42(b)(iii)(providing that the "trial court should consider whether: (A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice").

9. In support of certification, Mr. Abbott first argues that he meets Delaware Supreme Court Rule 42(b)(i)'s general standard for such appeals. He contends that the Court's decision creates a "substantial issue of material importance that merits appellate review before a final judgment."[18] He also addresses two of the eight criteria cited in Supreme Court Rule 42(b)(iii). Namely, he contends that the interlocutory orders raise questions of law resolved for the first time in this State.[19] He also alleges that interlocutory review of the orders would serve considerations of justice.[20] As the Court will explain, Mr. Abbott's request for interlocutory certification is supported by neither the general standard nor any of the eight criteria.

10. Regarding the general standard for certification, Mr. Abbott identifies no substantial issue that justifies an appeal before final judgment. The Court recognizes that Mr. Abbott's ongoing disciplinary action is important to (1) Mr. Abbott, (2) the Delaware Supreme Court, as the entity that regulates attorney conduct, and (3) the public. Nevertheless, because only the Delaware Supreme Court controls the attorney disciplinary process, Mr. Abbott fails to demonstrate a colorable claim for any injunctive relief, much less a TRO. Where there is no colorable claim for relief, there can be no substantial issue of material importance that merits interlocutory review.

11. Mr. Abbott also fails to demonstrate that any of the eight criteria identified in Supreme Court Rule 42(b)(iii) support certification. First, he contends that the two orders involve questions of law resolved for the first time in this jurisdiction. They do not. Rather, while he may be the first litigant to attempt to enjoin the

---

[18] Del. Supr. Ct. R. 42(b)(i).

[19] *See* Del. Supr. Ct. R. 42(b)(iii)(A)(providing the trial court should consider whether "[t]he interlocutory order involves a question of law resolved for the first time in this State").

[20] *See* Del. Supr. Ct. R. 42(b)(iii)(H)(providing the trial court should consider whether "[r]eview of the interlocutory order may serve considerations of justice").

7

attorney disciplinary process in this manner, he ignores well-settled law. Namely, the only entity with jurisdiction over the attorney disciplinary process is the Delaware Supreme Court. As a result, the Court of Chancery has no jurisdiction to interfere in his proceedings, has had no jurisdiction to do so since the State's founding, and would not have had jurisdiction in England before that.[21] In this regard, Mr. Abbott identifies no novel legal issue because (1) the Delaware Supreme Court exclusively regulates members of the Delaware Bar, and (2) an inferior court has no ability to enjoin the members of a higher court from performing their official duties.[22]

12. Likewise, Mr. Abbott's second-cited criterion does not support certification. Rule 42(b)(iii)(H) recognizes that interlocutory appeals may be appropriate if they serve considerations of justice. Mr. Abbott, however, makes only conclusory allegations that the attorney disciplinary system is biased against him and those similarly situated to him. If the Court were to certify an interlocutory appeal and sanction his attempt to halt the disciplinary process mid-stream, such action would do the opposite of serving considerations of justice. Those considerations are best served by (1) declining to enjoin an ongoing process before a hearing, and (2) denying certification of his appeal.

13. Finally, although Mr. Abbott did not address the remaining criteria cited in Rule 42(b)(iii), the Court has considered them. They likewise do not support certification. On balance, after fully considering Mr. Abbott's arguments, the Court

---

[21] *See In re Green,* 464 A.2d 881, 885 (Del. 1983)(describing the Delaware Supreme Court's authority over lawyer governance matters as being a "tenet [ ] of historic proportions, having been transplanted to Delaware by the colonists").
[22] *Marvel,* 2016 WL 3563273, at *1.

8

finds no benefit to certification that could outweigh the costs of piecemeal litigation.[23]

WHEREFORE, for the reasons discussed, Plaintiff Richard L. Abbott's application for certification of an interlocutory appeal is **DENIED.**

 **IT IS SO ORDERED.**


          /s/Jeffrey J Clark
          Resident Judge[24]

---

[23] *See* Del. Supr. Ct. R. 42(b)(iii)( also providing that "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice").

[24] Serving as a specially designated Vice-Chancellor pursuant to Article IV § 13(2) of the Delaware Constitution.